IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GARRY ZIKA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTOPHER CALVERT, and MATTHEW HOLCOMB, in their individual capacities,<br><br>    Defendants. | 4:23-CV-3249<br><br>MEMORANDUM AND ORDER |

The plaintiff, Garry Zika, alleges the defendants, Christopher Calvert and Matthew Holcomb, violated his Fourth Amendment rights. *See* filing 1 at 2. The defendants were law enforcement officers with the Scotts Bluff County Sheriff's Office at the time of the alleged violations. *See* filing 28 at 3-4. Zika brought this lawsuit under 42 U.S.C. § 1983. This matter is before the Court on the defendants' motions for summary judgment on the basis of qualified immunity. Filing 25; filing 26.

I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does

so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id*. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id*. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id*. In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

Based on the limited evidence available,[1] the parties mostly agree about what happened on January 26, 2020:

---

[1] Fact discovery in this case has been deferred until the Court's determination of qualified immunity. *See* filing 17; filing 34. The Court denied the plaintiff's request for additional discovery under Rule 56(d). Filing 34. The primary evidence consists of affidavits describing each parties' version of events. *See* filing 26-5 (Calvert's affidavit); filing 26-7 (Holcomb's affidavit); filing 38-1 (Zika's affidavit). The defendants have also presented some evidence of

Zika's neighbor called the Scotts Bluff County Sheriff's Office to report that Zika was riding on a tractor and drove over a mailbox. *See* filing 27 at 3. Both defendants were familiar with Zika, and they knew that he had been physically aggressive with law enforcement officers in the past. Calvert drove to Zika's residence to investigate the report. *See* filing 27 at 3. When Calvert arrived, he saw Zika riding on a tractor, and a mailbox on the ground.

Zika and Calvert had some brief interaction while Zika was on his tractor, *compare* filing 26-5 at 3, *with* filing 38-1 at 3-4, and then Zika parked the tractor and went inside his home. Calvert did not follow Zika. Instead, Calvert spoke to the neighbor who made the initial call and took some photographs of the mailbox. Filing 26-5 at 3. Calvert then radioed Holcomb for assistance.

The parties' version of events somewhat differs at the point Holcomb joined the scene—the defendants claim that Zika came onto his porch and told the defendants to leave before going back inside. Filing 27 at 4. Zika denies this; he says he never exited his home after the second officer arrived. *See* filing 38-1 at 4-5. But it's undisputed that Zika was inside his house when the defendants approached the front door to ask Zika about the mailbox. Zika refused to speak to defendants. Zika called 911 to report the defendants for trespassing. The defendants then attempted to forcibly enter the residence, and Zika stood behind his door to stop them. The defendants were able to overpower Zika and enter his home. *See* filing 27 at 4.

From here, the parties' version of events diverges significantly. According to the defendants, once they were inside the home, a struggle

---

Zika's prior interactions with law enforcement, and an affidavit from Zika's neighbor. *See generally* filing 26.

3

ensued: Zika resisted the officers and ignored their commands, and he fought the officers' attempt to handcuff him. *See* filing 27 at 5. Zika alleges that the defendants immediately tackled him and tased him. Filing 38-1 at 5. Zika denies that he resisted arrest or became physically aggressive with the officers.

It is undisputed that Calvert deployed his taser twice. After the second time, Zika was handcuffed and arrested. Filing 27 at 5.

### III. DISCUSSION

#### 1. QUALIFIED IMMUNITY

Zika claims that his Fourth Amendment rights were violated when the defendants made a warrantless entry into his home and used excessive force to subdue and arrest him. *See* filing 1. The only issue before the Court is whether the defendants are entitled to qualified immunity. Filing 24; filing 25; *see* filing 28.

Qualified immunity shields law enforcement officers performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a law enforcement officer is entitled to qualified immunity, the Court asks: (1) whether the facts alleged establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable officer would have known that his actions were unlawful. *Laney v. City of St. Louis*, 56 F.4th 1153, 1156 (8th Cir. 2023); *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980.

Law enforcement officers are entitled to qualified immunity unless the answer to both of those questions is yes. *E.g.*, *McDaniel v. Neal*, 44 F.4th 1085, 1089 (8th Cir. 2022). The Court may consider them in either order. *Id.* A right is clearly established if its contours are sufficiently definite that a reasonable officer would understand that what he is doing violates that right. *Id.* While prior cases need not have expressly determined the action in question is unlawful, the unlawfulness must be apparent in the light of pre-existing law. *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

2. I<span/>LLEGAL E<span/>NTRY AND A<span/>RREST

The Fourth Amendment shields individuals from unreasonable searches and seizures by law enforcement. *United States v. Anderson*, 688 F.3d 339, 344 (8th Cir. 2012). A search or seizure carried out in a suspect's home without a warrant is *per se* unreasonable, subject to a "carefully defined set of exceptions." *See id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)); *see also Cotten v. Miller*, 74 F.4th 932, 934 (8th Cir. 2023); *Lange v. California*, 594 U.S. 295, 308 (2021). The Supreme Court has frequently cautioned that even exigent circumstances rarely justify a warrantless home intrusion. *Luer v. Clinton*, 987 F.3d 1160, 1170 (8th Cir. 2021); *cf. Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("At the very core of the Fourth Amendment stands the right of a man to retreat into his home and there be free from unreasonable government intrusions.").

Law enforcement officers are entitled to qualified immunity for a warrantless entry into a home if two factors are present: (1) the officers had probable cause to believe that a crime has been committed, and (2) the officers

5

had an objectively reasonable basis to believe that exigent circumstances existed. *Cotten*, 74 F.4th at 934; *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). The analysis of a warrantless entry focuses on whether a law enforcement officer acted with a reasonable belief that probable cause and exigent circumstances existed, not on whether either actually did exist. *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004).

(a) Probable Cause

A law enforcement officer is entitled to immunity even if he "is wrong, so long as he is reasonable," and an officer need only have "arguable" probable cause to be immune from civil suit. *Walker*, 414 F.3d at 992. A law enforcement officer has arguable probable cause if the totality of the facts known at the time of the arrest would justify a reasonable person believing that a person has committed or is committing a crime. *E.g., Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017); *see also Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (arguable probable cause exists if a mistake is objectively reasonable).

Despite Zika's arguments otherwise, the defendants clearly had probable cause to support an arrest. A witness reported that Zika knocked over a mailbox with a tractor. *See* filing 27 at 2-3. Zika argues that fact is based on hearsay, and he alleges that he only accidentally knocked over his own mailbox. But those arguments don't defeat the defendants' assessment of probable cause. The statement made by the witness is offered for its effect on the listener, not for its truth. A law enforcement officer may rely on statements from witnesses in evaluating probable cause. *Joseph v. Allen*, 712 F.3d 1222, 1227 (8th Cir. 2013) (quoting *Borgman*, 646 F.3d at 523); *see also Cotten*, 74

6

F.4th at 935. And when Calvert got to Zika's house, he saw a knocked-over mailbox and Zika riding a tractor, verifying the witness's earlier statement.

Zika argues that the defendants conducted an inadequate investigation before arresting him. But an officer is not required to conduct a "mini-trial" before effectuating an arrest. *Gilmore*, 837 F.3d at 833. While an officer may not ignore plainly exculpatory evidence, *see id.*, Zika has failed to identify any such evidence, other than saying it was *his* mailbox on the ground and not his neighbor's, and it was an accident, not an intentional act. *See* filing 49 at 8. Even so, it's a federal crime to intentionally tear down or destroy "*any* letter box," not just a mailbox belonging to someone else. 18 U.S.C. § 1705 (emphasis added).[2] And the defendants couldn't have assessed Zika's intentions, particularly because Zika refused to speak with them, so it was reasonable to conclude, at the time of the arrest, that Zika acted unlawfully when he knocked over the mailbox with his tractor.

The totality of the circumstances indicates that the defendants had probable cause to believe Zika committed a crime. Calvert and Holcomb properly relied on the statements from the neighbor, Calvert's observation of Zika riding on his tractor, and their observation of a mailbox on the ground. Based on the undisputed facts, there was nothing the defendants could have immediately discovered that would have exonerated Zika, and they reasonably concluded that they had probable cause to arrest him. *See Gilmore*, 837 F.3d at 833.

---

[2] For the same reason, the parties' dispute about which mailbox was knocked over, *see* filing 49, is not material to the probable cause determination. Zika's objections to the photographs are also immaterial because Zika does not dispute that he knocked over his mailbox.

(b) Exigent Circumstances

But probable cause alone does not justify a warrantless entry into a person's home. A law enforcement officer may only forgo the warrant requirement in very limited circumstances. *See, e.g., Welsh,* 466 U.S. at 750; *Luer,* 987 F.3d at 1165; *Radloff,* 380 F.3d at 348. To evaluate immunity, the Court asks whether a law enforcement officer could have reasonably, even if mistakenly, concluded that exigent circumstances were present, based on the information possessed by the officer at the time. *E.g., Smith v. Kansas City, Mo. Police Dep't,* 586 F.3d 576, 581 (8th Cir. 2009); *Radloff,* 380 F.3d at 348. At the time of Zika's arrest, it was clearly established that "only a few such emergency conditions" justified a warrantless entry into a person's home, such as hot pursuit of a fleeing suspect, the risk of destruction of evidence, or a legitimate concern for the safety of law enforcement or others. *Welsh,* 466 U.S. at 750; *Anderson,* 688 F.3d at 345; *Cotten,* 74 F.4th at 935; *United States v. Janis,* 387 F.3d 682, 687 (8th Cir. 2004); *see also Lange,* 594 U.S. at 308; *Radloff,* 380 F.3d at 348.

Exigent circumstances may exist in a situation where there is a "compelling need for official action" and no time to secure a warrant. *Radloff,* 380 F.3d at 348. This may occur if a crime or neighborhood disturbance is ongoing. *See id.; Luer,* 987 F.3d at 1165-66 (discussing the "community caretaker" exception to the warrant requirement). Ultimately, an officer is entitled to immunity if he reasonably believed exigent circumstances existed, not on whether they actually did exist. *Radloff,* 380 F.3d at 348.

*(i) Hot Pursuit*

The defendants argue that they were in "hot pursuit" of Zika when they entered his home. The Court considers two factors in determining whether a

"hot pursuit" created an exigency: the gravity of the underlying offense, and whether the officers were in an "immediate or continuous" pursuit of the suspect from the scene of the crime. *Anderson,* 688 F.3d at 344.

Even assuming (without adopting) the dubious premise that Zika's offense was sufficiently grave to justify the entry, the defendants' pursuit was neither immediate nor continuous. By Calvert's own account, Calvert asked Zika to shut off the tractor, but Zika ignored the order, parked his tractor, and entered his residence. Calvert did not attempt to stop or arrest Zika, or even approach him, when he got off the tractor. Instead, Calvert investigated the crime scene: he took pictures of the mailbox, spoke with the neighbor who initially called the sheriff's office, and called Holcomb. Filing 27 at 4. It was then that the "hot" pursuit went cold. *See Luer,* 987 F.3d at 1167 (officers were not in hot pursuit "given the passage of time," approximately 15 minutes, since the suspect fled the scene).

Once Holcomb arrived, he and Calvert decided to "approach Zika's front door and try to speak to him again." Filing 27 at 4. The facts alleged fail to drum up any sense of urgency in arresting Zika. A hot pursuit doesn't exist just because a law enforcement officer knows where a suspect is. Zika was within his rights to remain in his home and insist on a warrant. *See Kyllo,* 533 U.S. at 31. Based on the undisputed facts, there was nothing "immediate" or "continuous" about the defendants' "pursuit." *See Anderson,* 688 F.3d at 344; *Luer,* 987 F.3d at 1167.

### (ii) Other Exigencies

The Court is not persuaded that any other exigency existed to justify a warrantless entry. The defendants argue that the totality of the circumstances indicate that they reasonably believed an exigency justified their entry. They

9

claim Zika posed a safety risk because he could have gotten back on his tractor or retaliated against his neighbor. They also argue that they knew Zika had been violent with law enforcement officers and others in the past, and the manpower limitations of the sheriff's office impaired their ability to timely obtain a warrant. Apparently, Zika's prior arrest required a "team" of ten officers from three separate agencies. Filing 28 at 17-18.

But the facts alleged do not indicate any *immediate* threat to anyone's safety at the time the defendants forcibly entered the home. There may be a threat to safety in almost any situation, but a lawful warrantless entry needs more than speculation about *future* threats to safety. *See Luer*, 987 F.3d at 1169. The defendants haven't shown that they *couldn't* wait for a warrant because of an exigency—just that doing so may have been inconvenient. The defendants could have mitigated the safety risks allegedly posed by the wait to obtain a warrant (*i.e.*, arresting Zika if he exited his home, disabling the tractor, waiting with the neighbor to protect him, etc.). There was no disturbance to the community, no ongoing threat of a continuing crime, and no safety threat to anyone in the home with Zika. There simply was no reasonable basis to believe exigent circumstances justified the warrantless entry. *Cf. Radloff*, 380 F.3d at 348.

The cases cited by the defendants do little to bolster their argument. There were no weapons seen or suspected, unlike in *United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989). And in *Janis*, police followed a trail of blood leading into the suspect's home; there was no such trail here, or even a suspicion that someone else was in Zika's home with him. 387 F.3d at 688. And the other cases cited, including *Stanton v. Sims*, 571 U.S. 3 (2013), *Commonwealth v. Montes*, 733 N.E.2d 1068 (Mass. Ct. App. 2000), and *State v. Pink*, 648 N.W.2d 107 (Iowa 2002), all involved an immediate and continuous

pursuit that is not present here, for the reasons thoroughly discussed above. The facts here, compared to the defendants' cited caces, fail to present a reasonable exigency.

At the time of the incident, it was clearly established that entering a person's home without a warrant, absent consent or exigent circumstances, violated that person's Fourth Amendment rights. *See Smith*, 586 F.3d at 581. The Court is not persuaded that the defendants "reasonably but mistakenly" concluded that exigent circumstances were present. *See id.* The defendants acted unreasonably when they chose to forcibly enter Zika's home to arrest him without a warrant. Neither Calvert nor Holcomb are entitled to immunity on Zika's illegal entry and arrest claims.

### 3. EXCESSIVE FORCE

Zika also claims, after they forcibly entered his home, the defendants used excessive force in arresting him. To evaluate whether law enforcement officers used excessive force, the Court looks to whether the conduct was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also, e.g., Tatum v. Robinson*, 858 F.3d 544, 548 (8th Cir. 2017); *Cartia v. Beeman*, 122 F.4th 1036, 1041 (8th Cir. 2024). The right to make an arrest necessarily carries with it the right to use some degree of physical coercion. *Tatum*, 858 F.3d at 549-50. Whether that coercion is reasonable depends on several factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 547 (quoting *Graham*, 490 U.S. at 396); *Kisela v. Hughes*, 584 U.S. 100, 103 (2018); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

11

Considering all the *Graham* factors: To begin with, Zika's crime, property damage, is relatively minor. No one was injured, no weapons were present, and the crime had been completed by the time Zika entered his home. For the reasons discussed above, there's no indication that Zika posed an immediate safety threat to anyone other than, potentially, the defendants themselves. The final factor is whether Zika resisted the arrest, and *those* facts are heavily disputed. *See* filing 27; filing 38-1.

The defendants claim that Zika hasn't mustered sufficient evidence to make out a triable issue of fact. Filing 44 at 14. They argue that this Court should not credit Zika's version of events because he "has not presented *any* account of what occurred after the officers entered his home." Filing 44 at 13 (emphasis in original). But Zika *does* explain what happened once the defendants made their way through his door: "Deputy Holcomb tackled me to the floor, hit me repeatedly, and Deputy Calvert 'tased' me with his 'taser' and also joined Deputy Holcomb in tackling me and hitting me." Filing 38-1 at 5. According to Zika, the defendants overpowered him and were physically aggressive towards him without provocation.

The Court must draw inferences in the plaintiff's favor, even when evaluating a defendant's assertion of qualified immunity, unless the plaintiff's version of the facts is blatantly contradicted by the record. *See Setchfield v. St. Charles Cnty*, 109 F.4th 1084, 1091 (8th Cir. 2024). The factual record in this case has not been fully developed; both parties' versions of the facts are contradicted by the other's. There is no video or other evidence about what happened in Zika's home that night. The Court may not resolve genuine disputes of material fact in the defendants' favor at the summary judgment stage, and instead must view the evidence most favorably to Zika. *Tatum*, 858 F.3d at 552.

(a) Holcomb

Zika doesn't dispute that he resisted the defendants' entry into his home. *See* filing 38-1 at 5. And once the defendants were able to push past the door, Holcomb tackled Zika and hit him. Filing 38-1 at 5. Holcomb is not alleged to have used a taser. *See* filing 38-1 at 5.

Holcomb was entitled to use some force to make the arrest. And a reasonable officer would have seen Zika's attempts to barricade the door as noncompliant. *See Cartia*, 122 F.4th at 1041 (discussing *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017)). A person may not forcibly resist even an unlawful arrest. *See State v. Wells*, 859 N.W.2d 316, 330 (Neb. 2015) (citing Neb. Rev. Stat. § 28-1409(2)); *see also Hill v. Scott*, 349 F.3d 1068, 1074 (8th Cir. 2003) (applying a similar Minnesota law in qualified immunity context).

Based on the totality of the circumstances, including Zika's size advantage (*see* filing 27 at 8) and Zika's attempt to resist the officers' entry, the Court is not persuaded that it was objectively unreasonable for Holcomb to tackle or hit Zika in order to arrest him. *See Cartia*, 122 F.4th at 1042. The undisputed facts do not establish a violation of a constitutional or statutory right, let alone a clearly established one, and Holcomb is entitled to immunity on Zika's excessive force claim.

(b) Calvert

Calvert, on the other hand, is alleged to have tased Zika twice after Holcomb had him on the ground. *See* filing 38-1 at 5. Zika denies resisting arrest after he was tackled. The defendants assert that Zika hasn't given any reason why he was tased twice, so he must have been resisting in some capacity. *See* filing 44 at 14. The defendants also claim that they knew Zika

13

had been aggressive with law enforcement officers in the past, justifying the force used.

But the Court has to draw inferences in the plaintiff's favor, and cannot discredit Zika's version of events. In *Tatum v. Robinson*, the Eighth Circuit determined a police officer was not entitled to qualified immunity where the officer choked a suspect and averred that the plaintiff resisted arrest, but the plaintiff, in an affidavit, alleged the opposite. 858 F.3d 544, 551-52 (8th Cir. 2017). The circumstances are similar here: Zika asserts that he was nearly immediately tased and he did not resist once Holcomb tackled him. *See* filing 38-1 at 5. Drawing inferences in favor of the non-moving party, once Holcomb tackled Zika, Zika was adequately restrained, and Zika claims he did not resist the arrest.

A juror who believes Zika's version of events might infer that the defendants decided to tase Zika because they were prejudiced against him, given his prior offenses. And the Court agrees with Zika that a law enforcement officer is not entitled to qualified immunity on an excessive force claim because they believe a suspect *might* resist an arrest. *See* filing 40 at 23. On the contrary, it was clearly established at the time of Zika's arrest that a nonviolent suspect's right to be free from excessive force is violated if officers choke, kick, or punch him when he is restrained, not fighting, and not resisting. *Tatum,* 858 F.3d at 552; *see also Cartia,* 122 F.4th at 1043 (discussing rights clearly established in 2018). "Tasing" is more excessive than any of those acts. *See Brown,* 574 F.3d at 499. While Zika may have been aggressive or violent in the past, the arrest was made because Zika knocked over a mailbox, a nonviolent and minor criminal offense. Based on the well-established law at the time of the arrest, Calvert would have known that it was unlawful to tase a nonresistant, subdued suspect.

Considering all the circumstances, *see Graham*, 490 U.S. at 396, Calvert is not entitled to immunity on Zika's excessive force claim. The facts alleged by Zika establish a constitutional violation, and his right to be free from excessive force under these facts was clearly established at the time of the alleged violation.

## IV. CONCLUSION

The undisputed facts indicate that the defendants forcibly entered Zika's home, tased him, and arrested him, all without a warrant. There was no exigency to justify the entry: the defendants were not in an immediate and continuous pursuit of Zika, nor did the defendants suspect weapons were present, nor was there any *immediate* threat to the safety of anyone in the vicinity. Neither defendant is entitled to immunity Zika's claims premised on the warrantless entry and arrest.

Holcomb is entitled to immunity for the excessive force claim. When Zika resisted the officers' entry into his home, Holcomb was entitled to use some force to effect the arrest (even if the arrest was unlawful). But given the material facts still in dispute, Calvert is not entitled to immunity for deploying his taser twice when Zika disputes that he was resisting arrest. Drawing inferences in favor of the non-moving party, once Holcomb tackled Zika, Zika was subdued, and the use of the taser was excessive.

Accordingly,

IT IS ORDERED:

1. Defendant Christopher Calvert's motion for summary judgment (filing 24) is denied in its entirety.

2. Defendant Matthew Holcomb's motion for summary judgment (filing 25) is granted in part and denied in part.

3. This case is referred to the Magistrate Judge for discovery.

Dated this 29th day of January, 2025.

                      BY THE COURT:

                      John M. Gerrard
                      Senior United States District Judge